### LORENZ v. PLEUKHARP et al.
Patent Appeal No. 2302.

Court of Customs and Patent Appeals.
April 14, 1930.

V. M. Dorsey, of Washington, D. C. (S. F. Parham, of Washington, D. C., of counsel), for appellant.

Dewey, Strong, Townsend & Loftus, of San Francisco, Cal. (Harry F. Riley, of Washington, D. C., of counsel), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office awarding priority of invention to appellees, Pleukharp and Raynes, in respect to a method of and apparatus for supplying charges of molten glass to various molds wherein glass articles are formed.

Appellees filed their application for patent on June 12, 1922. Appellant, the senior party, filed his application April 4, 1922. The junior parties took testimony for the purpose of showing that their conception and reduction to practice preceded the filing date of appellant.

The Examiner of Interferences held that appellees' proofs were insufficient to justify awarding priority to them. The Board of Appeals reversed the finding of the Examiner of Interferences, holding that the testimony showed priority of conception and reduction to practice in Pleukharp and Raynes in respect to all the counts in issue, and awarded priority of invention to them.

The interference relates to a mechanism for operating shears or a severing device for molten glass as the glass comes out of the tank. The novelty of the invention consists of an adjustable cam or cams to vary the time interval between the successive actuations of the shears so that different sized charges may be produced; the purpose being to supply two or more sets of molds from a single delivery orifice, each with a different sized charge. In this manner, from one tank or feeder glassware of different weights may be made in several different forming machines at the same time. If the cutting-off shears are actuated at intervals of different duration, as the plastic molten mass finds its way out of the container at a single delivery orifice, the sizes and weights of the glass charges will vary in proportion to the period of time existing between such actuations.

Both parties to the interference solved the problem of providing different sized charges to different sets of molds by the use of a cam which, owing to its irregular shape as it rolled against a roller on the end of a plunger, caused the plunger, which operated the shearing device, to plunge or operate at unequal intervals. The cam wheel, which was fastened on a cam shaft, in its form as presented to the Patent Office was nearly circular or disc shape, except it contained two projections, not opposite to each other, but so spaced that for nearly one-half of the distance around the cam wheel the roller on the plunger would remain in neutral. The oth-

er half of the disc contained two unequal projections which caused the plunger to plunge twice while the roller was on that side of the wheel.

The counts in interference are as follows:

"1. Apparatus for separating molten glass into mold charges of different weights comprising a container having a discharge outlet, severing mechanism below the outlet, and means for operating the severing mechanism at the end of intervals of different duration in a given cycle.

"2. The method of producing mold charges of different sizes for making glassware, which comprises discharging molten glass from a container, and severing the discharged glass at regulated unequal intervals of time, adapted to the different sizes to be produced.

"3. The method of producing mold charges of different sizes for making glassware, which comprises discharging molten glass from a container, and severing the discharged glass at time intervals of periodically varying duration.

"4. The method of producing mold charges of different sizes for making glassware, which comprises discharging molten glass from a container, and severing the discharged glass in repeated series of intervals varying in a cyclic order in each of the series."

Appellant has assigned a number of errors, but here states that only the following points are raised by this appeal:

"1. The Board's erroneous view of the scope of the counts and its disregard of the prior decisions fixing the meaning thereof. (Reason of appeal, 5.)

"2. The Board's erroneous conclusions as to the evidence and its erroneous application thereof to the counts, including the acceptance by the Board of matters which it suspected might have been proven, but which in fact were not established. (Reasons of appeal, 1 to 4 and 6 to 11.)

"3. The Board's erroneous conclusion of invention *jointly* by Pleukharp and Haynes. (Reason of appeal 6.)" (Italics quoted.)

As to the first reason for appeal, the Board of Appeals said:

"He (the examiner) arrives at this conclusion from the history of the case during the interlocutory period, and seems to indicate that his decision turns, in part at least, on the restricted meaning he has given the counts. There was no motion to dissolve and we do not find the patentability of the counts was questioned or decided in connection with the motion to amend. But even with the re-stricted interpretation, the junior party's proofs are ample. The adjustable setting of the cams on the timer shaft resulted in a machine responding to the examiner's interpretation of the counts."

We agree with this view, and think it fully answers the first reason for appeal.

The third reason for appeal may be disposed of by saying that this question is so thoroughly and accurately discussed in the opinion of the Board as to be convincing of its correctness, and needs no further discussion here.

The main question in the case (second reason for appeal) involves the correctness of the Board's ruling that appellees by their proof established conception and reduction to practice prior to the filing date of appellant. Appellees took the testimony of five witnesses. The testimony involved technical matter, and some of the witnesses had great difficulty in expressing themselves in such terms as would be readily understood from the printed record.

We think, however, the testimony abundantly supports the views entertained by the Board of Appeals that appellees did show conception and reduction to practice of the four counts involved long before the filing date of appellant. While the testimony does not speak in the terms of the counts, it shows that appellees, while in the employ of the Illinois-Pacific Glass Company, by inadvertence discovered that the unequal spacing of projections on a cam shaft caused the shears to cut off different weights of glass. They were operating with a cam (Exhibit 1) which is before us (or one which, if not identical, is similar), and which was in two parts, with a hole near the end of each part, so that, when the ends were joined and superimposed upon each other, there would be a hole therein for the cam shaft. When so placed, each part or projection would be at right angles from the other, and, when the cam shaft revolved, the projections would come in contact with the plunger roller at equal intervals. The cam, being in two parts, came out of adjustment, or became "out of line," so that the intervals of time between which the plunger was pressed became unequal. The shears therefore operated at unequal intervals, and two different sizes of charges were cut off.

The glass plant burned in May, 1920. The use of the cam described was prior to the fire. Soon after the fire, about July 20th, the cam was improved, as illustrated by Exhibit 3, in such a manner that the projections

could be adjusted so as to bring about the time intervals desired.

The testimony is positive that in December, 1920, appellees' employers were operating three machines from one feeder (using the cam devices above described), two machines producing tumblers of 5¾-ounce weight and one machine producing tumblers of 4½-ounce weight; that this operation continued for some time, when a change was made so that one machine produced a 4-ounce weight and the other a 4½-ounce weight. The machines were not operated as indicated as an experiment, but as part of the regular performance of the plant in making commercial articles.

It must be remembered that everything in connection with the device shown by both parties was old in the art except the arrangement of the cam for the purpose of producing charges unequal in weight. Both inventors sought to solve the same problem, and both did solve it.

Appellees were first to conceive the invention and reduce the same to practice, and the Board correctly awarded priority to them. The decision of the Board of Appeals is affirmed.

Affirmed.